IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 06-667-1 |
| v. | : | |
| | : | CIVIL ACTION |
| JOSE DEL VALLE | : | NO. 10-3640 |

MEMORANDUM

Bartle, C.J.                                                December 1, 2010

Before the court is the motion of defendant Jose Del Valle to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

Del Valle was found guilty by a jury on April 20, 2007 of: (1) conspiracy to possess with intent to distribute 5 kilograms or more, that is, approximately 24 kilograms, of cocaine, in violation of 18 U.S.C. § 846 (Count One); and (2) possession with intent to distribute 5 kilograms or more, that is, approximately 24 kilograms, of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two). He was sentenced on September 7, 2007 to a term of life imprisonment and a term of supervised release of ten years, the mandatory minimum sentence. The Court of Appeals for the Third Circuit affirmed the judgment and sentence on April 28, 2009. See U.S. v. Del Valle, 323 Fed. App'x 125 (3d Cir. 2009). It issued its mandate on May 21, 2009.

Del Valle now alleges in his § 2255 petition that he was deprived of his Sixth Amendment right to effective assistance of counsel through a long list of errors made by his retained

counsel at the pre-trial, trial, and sentencing phases of his case. On November 23, 2010, the court held an evidentiary hearing limited to the issue of whether Del Valle's counsel misadvised him to stand trial rather than plead guilty.

I.

The underlying facts, in the light most favorable to the Government, are as follows. In October, 2006, DEA Task Force agents in northern New Jersey acted on a tip from a confidential informant and began surveilling 120A East Edsall Avenue, Palisades Park, New Jersey. The agents observed movements of the residence's occupants in different vehicles that suggested a pattern of drug trafficking.

On October 18, 2006, the agents followed a red Nissan pick-up truck with Illinois license plates from that location to a mall parking lot in front of a Lowe's store on Roosevelt Boulevard in Northeast Philadelphia. The driver of the Nissan was later identified to be Luis Santiago-Gaston. Agents observed Santiago-Gaston exit his vehicle, survey the parking lot, place his jacket on the rear of the driver's seat, and then enter Lowe's. Shortly thereafter, the agents saw Del Valle pull up next to the red Nissan in a black Chevy Tahoe truck. Del Valle exited the Chevy and entered the Nissan on the driver's side, while his passenger in the Chevy moved to the driver's seat of the truck. The two vehicles then left the mall parking lot together and headed to a fenced lot at West Sedgley Avenue and North 3rd Streets, approximately thirty minutes away. The agents

then lost sight of the vehicles but believed that they had witnessed a narcotics drop.

Fifteen minutes later, the agents saw the vehicles pull out of the fenced lot. They returned to the mall parking lot where Del Valle exited the Nissan and got into the Chevy. The Chevy left the parking lot, and shortly thereafter Santiago-Gaston emerged from Lowe's without any packages, entered the Nissan, and returned to Palisades Park, New Jersey. Again, the agents believed that they had seen a narcotics or narcotics money transfer and increased surveillance of 120A East Edsall Avenue.

During their surveillance of 120 East Edsall Avenue on October 29, 2006, the agents saw Jose Cervantes drive away from the residence in the red Nissan, whose Illinois license plates had now been exchanged for New York license plates. Cervantes drove to the same mall parking lot in Northeast Philadelphia, this time parking in front of a WalMart. Cervantes left the Nissan and walked into the WalMart. Shortly thereafter, agents observed Del Valle drive up in the same Chevy Tahoe truck, exit his vehicle, and enter the driver's side of the Nissan. This time, his passenger Herminio Galindez exited the Chevy with a large black duffle bag and climbed into the passenger side of the Nissan. The two drove out of the mall parking lot into a nearby residential area.

The agents followed Del Valle in the Nissan and observed him driving in an unusual manner. The agents believed that Del Valle was engaging in classic counter-surveillance

maneuvers. After approximately twenty minutes of driving throughout the residential neighborhood, Del Valle pulled over. Galindez exited the vehicle with the black duffle bag and reentered the rear passenger area where he began moving about. Based on their training and experience, the agents believed that Galindez was storing narcotics in a secret compartment in the rear of the car. Del Valle then began driving in the direction of the mall parking lot.

During his return trip to the mall parking lot, Del Valle made an abrupt turn in front of another vehicle. The agents became concerned that Del Valle had realized that they were following him. They pulled the Nissan over on Bluegrass Road. As they approached the vehicle, they observed Del Valle in the passenger seat with his hands already raised. They also observed Galindez in the rear of the vehicle, crouching over the open black duffel bag. The agents recognized the contents of the duffel bag as kilograms of cocaine.

The agents then removed Del Valle and Galindez from the vehicle and arrested them. The agents recovered 12 kilograms of cocaine from the open duffel bag and $22,000 in cash from a passenger side rear seat hidden compartment, the contents of which were visible at the time of the stop. They then forced open a hidden compartment under the driver's side rear seat and found an additional 12 kilograms of cocaine.

After being processed and given warnings pursuant to <u>Miranda v. Arizona</u>, 382 U.S. 436 (1966), Del Valle signed a

waiver of his Miranda rights.  He admitted possession of the narcotics found by the agents in the Nissan and advised them that he had received other large quantities of cocaine from Cervantes on three other occasions.  He detailed for the agents the logistics of his meetings with Cervantes, the purchase and sale prices of the cocaine, his alleged customers, and other persons involved in the drug trade.

On November 29, 2006, a federal grand jury returned a two-count indictment against Del Valle and Galindez for conspiracy to distribute more than five kilograms of cocaine and possession with the intent to distribute more than five kilograms of cocaine.  On January 5, 2007, Del Valle replaced his court-appointed counsel with a privately retained attorney, F. Michael Medway.  On January 9, 2007, the government filed a notice pursuant to 18 U.S.C. § 851.  This notice alerted Del Valle that these charges carried an enhanced mandatory sentence in light of his two prior convictions for drug distribution offenses.

Del Valle's attorney made a motion to suppress the 24 kilograms of cocaine that had been seized at the time of his arrest and his subsequent statements to the agents.  He argued that the agents' initial stop of his vehicle was done without reasonable suspicion, and therefore that all evidence obtained subsequent to that stop was inadmissible.  After a hearing, the court issued a Memorandum and Order denying Del Valle's motion.  The court found that the totality of the circumstances surrounding the stop – including driving the Nissan from

Palisades Park to the mall parking lot, the prior surveillance, the switching of vehicles, and the unusual driving patterns – gave rise to a reasonable suspicion of illegal activity.

On April 21, 2007 after a two-day trial, the jury returned guilty verdicts as to both Del Valle and Galindez on both counts of the indictment. On April 25, 2007, Del Valle filed a post-trial motion for acquittal pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure based on a claim that the court erred in denying his motion to suppress and that the evidence presented at trial was insufficient to support a conviction. On July 2, 2007, the court denied the motion. It explained that "the government offered voluminous, credible evidence that Del Valle and another defendant knowingly possessed and conspired to possess twenty-four kilograms of cocaine."

On September 7, 2007, the court imposed a sentence of life imprisonment which was mandated based on the quantity of cocaine found by the jury and Del Valle's two prior convictions for drug distribution. Del Valle appealed his case to the Court of Appeals for the Third Circuit. As noted above, the Court of Appeals affirmed.

On August 12, 2010, Del Valle filed the pending § 2255 motion. On November 23, 2010, the court held a hearing on the issue of whether counsel misadvised him to stand trial rather than plead guilty.

II.

Del Valle first alleges ineffective assistance of counsel under the standard set forth in Strickland v. Washington. 466 U.S. at 687. He contends that counsel was ineffective based on nine different grounds: (1) failing to advise Del Valle as to the law and facts relevant to his decision to plead not guilty; (2) failing to move timely, properly, and effectively for suppression of evidence material to his conviction or for dismissal of the indictment; (3) failing to present available, material, exculpatory evidence at trial and failing to timely object to the admission of unlawful evidence; (4) failing to advise him as to all facts and law relevant to his decision to testify at trial; (5) failing to request appropriate jury instructions, to object to insufficient instructions, and to object to improper argument by the prosecution; (6) failing to investigate or present available evidence and legal authority material to sentencing; (7) failing to move for an appropriate downward departure or variance; (8) serving as counsel to Del Valle while having an actual conflict of interest which adversely affected his performance; and (9) the cumulative errors committed by counsel.

Under the Strickland standard, Del Valle bears the burden of proving that: (1) counsel's performance was deficient; and (2) he suffered prejudice as a result. Id.; United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989). The first prong requires that "[counsel's] performance was, under all the circumstances,

unreasonable under prevailing professional norms." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Our scrutiny of counsel's performance is highly deferential in that we presume counsel's actions were undertaken in accordance with professional standards and as part of a "sound trial strategy." Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). To satisfy the prejudice prong, Del Valle must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. When ruling on a § 2255 petition, the court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

Del Valle first contends that his counsel's performance was ineffective because counsel failed to advise him as to the law and facts relevant to his decision to plead not guilty. At the hearing held by the court, Del Valle testified that he had not prepared his own § 2255 petition and did not fully understand the grounds alleged in it, including the allegation that his counsel misadvised him to stand trial rather than plead guilty. He testified that the government had never made him any plea offer that would have reduced his mandatory minimum life sentence and that counsel attempted to persuade him to cooperate with the

government in hopes of earning a sentence reduction under § 5K1.1 of the Sentencing Guidelines. He stated that he knew that the government did not offer him a cooperation agreement because it did not believe the information that he proffered to them and that, without such an agreement, pleading guilty would have still resulted in a mandatory minimum life sentence.

Michael Drossner, Del Valle's initial court-appointed attorney, testified and corroborated Del Valle's statements. According to Drossner, he informed Del Valle at an early date that he was facing a mandatory minimum life sentence and could only avoid that by earning a cooperation agreement with the government. F. Michael Medway, Del Valle's attorney during his trial, also testified. After cooperation attempts with the government failed, he counseled Del Valle to go to trial because pleading guilty would have still resulted in a mandatory minimum life sentence. He testified that, in the absence of a cooperation agreement, the only realistic way for Del Valle to avoid a life sentence was to make a motion to suppress the evidence found during the search of his car. Del Valle did attempt to plead guilty after his suppression motion had been filed but not yet resolved by the court. Medway testified that he convinced Del Valle not to plead guilty at that time because doing so would result in a mandatory minimum life sentence.

It is undisputed that Del Valle faced a mandatory minimum life sentence based on two prior drug trafficking convictions and that the government refused to offer Del Valle a

cooperation plea agreement. There is no support in the record to substantiate Del Valle's assertion that pleading guilty early would have resulted in a reduced sentence or that counsel in any way deterred him from seeking a cooperation agreement with the government. In fact, the credible testimony of both his former counsel given at the recent hearing reveals that they encouraged him to proffer to the government in hopes of reaching a cooperation plea agreement. Given that no cooperation agreement was ever offered by the government, Del Valle faced a mandatory minimum life sentence regardless of whether he pleaded guilty or stood trial. There is no basis in the record to find that Del Valle's counsel were ineffective in rendering advice regarding his decision to stand trial rather than plead guilty.

The remainder of Del Valle's contentions regarding his counsel's ineffectiveness are mere conclusions without the necessary factual allegations to substantiate them. For example, Del Valle alleges that counsel was ineffective for failing to present available, material, exculpatory evidence at trial and failing to object timely to the admission of unlawful evidence is similarly unpersuasive. However, he does not reveal what "available, material, exculpatory evidence" counsel failed to present or to what unlawful evidence counsel allegedly failed to object. Without such information, it is impossible to find that Del Valle was in any way prejudiced by his counsel's performance.

Similarly, Del Valle contends that counsel was ineffective for failing to advise him of all the facts and law

relevant to his decision not to testify at trial.  However, Del Valle does not state that, had he been properly advised, he would have taken the stand.  There is no prejudice to Del Valle in this instance because he does not allege that his decision would have been changed by such advice.  He also avers that his counsel labored under an actual conflict of interest but fails to state what that conflict is.  His allegations regarding counsel's ineffectiveness at sentencing are inapposite because, once found guilty, he was subject to a mandatory minimum sentence, which is what he received.  Del Valle's conclusory allegations regarding his counsel's alleged substandard performance are without sufficient factual basis to convince the court that any prejudice to him resulted.

Del Valle also raises several other grounds for vacating his sentence outside of his counsel's performance.  These allegations are unavailing.  For instance, he challenges his sentence on multiple grounds.  He contends that his statutory maximum sentence was increased based on facts not charged in the indictment, not submitted to a jury, and not proven beyond a reasonable doubt.  He also maintains that the court lacked knowledge of its discretion under the change in law affected by Apprendi v. New Jersey, 530 U.S. (2000).  Neither of these arguments is sound.  Based on Del Valle's two prior criminal convictions, the court was required by law to impose a mandatory minimum life sentence once the jury found Del Valle guilty.  See 21 U.S.C. §§ 851, 841(a).  The jury did find all relevant facts

underlying his conviction, including the quantity of drugs he possessed. Neither the Fifth or Sixth Amendments, nor the case law espoused in <u>Apprendi</u>, gave the court any discretion to alter that mandatory minimum life sentence.

Del Valle's other contentions are similarly without any basis in fact. He contends that he was denied his Second Amendment constitutional right to "keep and bear arms," although this case has no connection to any kind of firearm. Finally, Del Valle makes the blanket allegation that his conviction and sentence violate his First, Second, Fourth, Fifth, Sixth and Eight Amendment rights. Without any factual support for these broad allegations, the court cannot find that any constitutional infirmities exist.

As he admitted at the November 23, 2010 evidentiary hearing, Del Valle did not himself prepare his § 2255 petition or know or understand the allegations contained therein. The petition is devoid of any factual basis for granting the relief sought. Its allegations are generic and without any genuine connection to the underlying criminal action. There are no grounds upon which the court can grant relief to Del Valle. Accordingly, we will deny Del Valle's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.